**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| HARRYEL BERROA | : | INMATE CIVIL RIGHTS COMPLAINT |
| | : | PURSUANT TO BIVENS, 28 U.S.C. §1331 |
| | : | and FTCA |
| | : | FEDERAL TORT CLAIMS ACT |
| Plaintiff | : | |
| v. | : | |
| | : | |
| THE UNITED STATES OF AMERICA | : | CIVIL ACTION NO. _____ |
| AND ITS EMPLOYEES | : | |
| and | : | |
| FEDERAL BUREAU OF PRISONS | : | |
| and | : | |
| WARDEN MR. DAVID ORTIZ | : | |
| and | : | |
| JOHN AND JANE DOE | : | |
| CORRECTIONAL OFFICERS | : | |
| 1 THROUGH 4 | : | |
| and | : | |
| JOHN AND JANE DOE MEDICAL | : | |
| DOCTORS 1 THROUGH 3 | : | |
| Defendants | : | |
| | : | |
| | : | |

## **COMPLAINT**

Plaintiff Harryel Berroa avers as follows:

## **NATURE OF ACTION**

1.      This case arises out of a brutal attack Mr. Berroa suffered on or about March 22,

2019, while he was an inmate at FCI Fort Dix.  The attack was allowed to occur because of: (1) a

crucial way of egress that was usually unlocked was locked at the time of the incident; (2) the

appointed correctional officers failed to make the usual rounds on the night of the incident; (3)

the prison lacked panic buttons and other common safety features present on many major

correctional facilities throughout the country; and (4) the prison lacked security cameras to act as both a deterrent to such attacks and to tool by which to identify offending inmates.

2.      After eventually providing Mr. Berroa with the opportunity to seek some treatment for his very serious injuries from the vicious assault, the officials at FCI Fort Dix assigned Mr. Berroa to solitary confinement where he was denied any sort of pain management for four days.  Further, he was denied and assistance with reaching or eating his food while in solitary confinement.  He was also denied any assistance with any of his other daily activities during this period.

## JURISDICTION AND VENUE

3.      This court has federal question jurisdiction over this matter as Mr. Berroa's claims arise under federal law pursuant to 28 U.S.C. §1331, The Federal Tort Claims Act, 28 U.S.C. §1346(b) and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, U.S. 388, 91 S. Ct. 1999.

4.      Venue for the claims is proper in this Court pursuant to 28 U.S.C. §1391, as the events giving rise to the claims occurred within this district.

## PARTIES

5.  Plaintiff, Harryel Berroa, is an adult individual, citizen and resident of the Commonwealth of Pennsylvania.

6.      Defendant, United States of America, at all times relevant, was the ultimate employer of the Federal Bureau of Prisons and FCI Fort Dix.

7.      Defendant, Federal Bureau of Prisons, at all times relevant, was an agency of the United States of America, of which FCI Fort Dix was a subsidiary institution.

8.      Defendant, Warden David Ortiz, at all times relevant, was the warden of FCI Fort Dix, located at 5756 Hartford Street and Pointville Road, Fort Dix, NJ 08640.

9.      Upon information and belief, Defendants John and Jane Doe Correctional Officers 1 through 4, at all times relevant, were federal correctional officers assigned to the relevant area of FCI Fort Dix on or about March 22, 2019.

10.     Upon information and belief, Defendants John and Jane Doe Medical Doctors 1 through 3, at all times relevant, were medical doctors either employed or contracted to treat inmates at FCI Fort Dix between March 22, 2019 and October of 2019.

## FACTS

11.     On or about March 22, 2019, at approximately 11:20 pm, while an inmate at FCI-Fort Dix (Eastside Compound), Mr. Harryel Berroa was pursued and brutally assaulted by several inmates as he walked to his cell (Unit 5702 rm 201).

12.     In an attempt to save himself, Mr. Berroa attempted to escape through a previously unlocked stairwell that had previously provided inmates with a means to seek safety in the event of a conflict. Finding the stairwell locked, Mr. Berroa then attempted to run down a hall to his cell, but it was a dead-end and he was trapped.

13.     At all times relevant, there were no security cameras in this area of the Eastside Compound, nor where there any guards in the vicinity to protect Mr. Berroa and control these inmates.

14.     Upon information and belief, the area where Mr. Berroa was attacked was an area known to be and had a reputation as an area where attacks, assaults and altercations between inmates often occurred.

15.     Mr. Berroa was savagely kicked, punched and beaten, enduring this assault for approximately 8-10 minutes.

16.     Upon information and belief, the guard that was on duty never made the appointed rounds.

17.     Mr. Berroa ultimately walked himself to the officers' station to report the assault.

18.     Upon information and belief, the correctional officers, warden, regional office, and the central office were aware of and had notice of the danger posed to the safety and security of the inmates at FCI Fort Dix by the locked stairs.

19.     Upon information and belief, prior to the events of March 22, 2019, several inmates voiced their concerns about the locking of the subject staircase to the Warden and his staff at townhall meetings that all inmates are invited to/ordered to attend.

20.     After the vicious assault, and in the early hours of March 23rd, 2019, Mr. Berroa was transported to the emergency department at Robert Wood Johnson Hospital in Hamilton, NJ where his care was overseen by Dr. William Sproule, M.D.

21.     His initial complaints included head pain, neck pain and abdominal pain.  After a CT scan, he was diagnosed with, among other injuries, a right front scalp hematoma, extensive swelling to the right side of his head and face, a fractured orbital floor with blood in the right maxilliary sinus, bilateral nasal bone fractures and a possible acute left maxillary tooth injury.

22.     During his visit, pain medications including morphine were administered to Mr. Berroa to help manage his excruciating pain.

23.     Later, on the morning of March 23,2019, Mr. Berroa was transported to Cooper Hospital and underwent the first of several surgeries, a closed reduction of nasal bone fracture.

24.    His treating physicians at Cooper Hospital included Dr. John M. Porter, M.D. and Anna Goldenberg Sandau.  Another CT scan showed bilateral comminuted nasal bone fractures with displacement to the left. There was also a fracture of the adjacent vomer bone of the nasal septum. There was a depressed right orbital floor fracture with involvement of the inferior orbital rim and there was also a fracture of the medial wall of the right orbit.

25.    During his stay at Cooper hospital, Mr, Berroa was given fentanyl for his pain. On the day of discharge, he was given Oxycodone for pain. Right orbital edema and ecchymosis was noted.

26.    Mr. Berroa was then discharged on March 25, 2019 with instructions for his follow up medical care, including pain medications which were delayed or never received upon his return to FCI Fort Dix, as well as follow up appointments with specialists which were ultimately cancelled by the prison.

27.    Upon his return to FCI Fort Dix, Mr. Berroa was placed in solitary confinement for 30 days and was not given any pain medication for four days. During this time in solitary confinement, fresh out of surgery to repair his debilitating injuries, Mr. Berroa suffered immense pain and suffering. He received no help reaching his food during this period.  He received no assistance attending to his daily activities during this time in solitary confinement.

28.    On April 11, 2019, Mr. Berroa was seen at Princeton Eye and Ear in Lawrenceville, NJ by Dr. Nishant P. Reddy who removed his packing and evaluated him.

29.    On April 23, 2019, Mr. Berroa was seen at FCI Fort Dix by Dr. Beyer for persistent flashes.  No signs of retinal tears or retinal holes were observed by Dr. Beyer upon examination.

30.     Mr. Berroa was seen by Dr. Bruce Keyser of NJ Retina on July 19, 2019, for flashes and intermittent binocular double vision.  He noted a few small peripheral retinal tears that he did not feel needed any treatment.  During this time, walking too quickly would make Mr. Berroa dizzy.  Sunlight was blinding to him.

31.     Mr. Berroa was finally released from FCI Fort Dix to a half-way house in Philadelphia, Pennsylvania in the fall of 2019.  As his recovery continued, so did his need for medical care.

32.     Mr. Berroa was evaluated at the Stephen Klein Wellness Center at Project Home in Philadelphia, Pennsylvania as well as the Cooper Hospital Maxillofacial Surgery Center in Voorhees, New Jersey and Eye Health of Camden, New Jersey.

33.     Mr. Berroa was also treated Opthalmologist, Dr. Alison B. Watson, M.D. of Wills Eye Hospital in Philadelphia.  His first visit with her was on September 24, 2019.  He was diagnosed as having intermittent diploia.  He complained of his right eye being sunken into the eye socket.

34.     At his October 15, 2019 office visit with Dr. Watson, he was diagnosed as having apparent flattening of the cheek and distortion of nasal anatomy suggestive of coincident facial fractures. Repeat imaging revealed extensive facial and nasal bone trauma involving the medial orbital wall and floor.

35.     Mr. Berroa was evaluated by Dr. Watson's ENT/Facial plastics colleagues, and he was determined to be a candidate for reconstructive surgery, which was performed at Jefferson University Hospital in Philadelphia on December 20, 2019.  Facial implants and titanium screws now reside in Mr. Berroa's face.

36.     On December 20, 2019, Drs. Alison Watson, M.D., Mindy Rabinowitz, M. D., and Howard D. Krein, M.D. performed several procedures on Mr. Berroa, including, but not limited to:

   a.   Open reduction and internal fixation with placement of titanium implant to repair right orbital floor and medial wall fracture;

   b.   Right Canthoplasty;

   c.   Functional Septorhinoplasty with nasal valve repair;

   d.   ORIF of Nasal Bone Fractures; and

   e.   Functional Endoscopic Sinus Surgery with turbinectomy.

37.     He continued to follow up with his surgeons throughout the year of 2020 and had additional appointments scheduled throughout 2021.

38.     Throughout his recovery from this incident, Mr. Berroa has experienced, anxiety, embarrassment, humiliation, depression and mental anguish due to the harrowing experience of being overpowered and being beaten ceaselessly for minutes.

39.     After being released from solitary confinement post-attack, Mr. Berroa sufferend months of deformity after that night prior to his release from prison custody in the fall of 2019.

40.     At one point he was offered an eye patch.  Eventually, he opted to wear sunglasses to hide his deformity.

41.     Mr. Berroa has suffered and does suffer trouble sleeping at night.  During the course of his recovery and treatment, he was diagnosed with Post-Traumatic Stress Disorder.

42.     Mr. Berroa subsequently filed a Claim for Injury, Damage or Death (Form 95) with the Federal Bureau of Prisons on or about March 18, 2021.  A true and correct copy of same is attached as Exhibit A.

43.     Mr. Berroa's claim was ultimately not decided.

## <u>COUNT I-NEGLIGENCE</u>

44.     Plaintiff hereby incorporates paragraphs 1 through 43 of this Complaint as though set forth herein at length.

45.     Defendants had a duty to secure the prison facility for the benefit of inmates such as Mr. Berroa by employing tools and techniques including, but not limited to, security cameras in all areas of the prison facility, especially an area known to be safety hazard for inmates with regard to inmate violence and attacks.

46.     Defendants breached that duty by failing to provide security cameras in an area known for previous safety issues and inmate violence.  As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

47.     Further, Defendants breached the duty to secure the prison facility and protect inmates such as Mr. Berroa from such preventable catastrophic injuries by failing to ensure that its correctional officers made the necessary rounds.

48.     Defendants had a duty to secure the prison facility with correctional officers in areas known to have no security cameras and known to be safety hazards for inmates, i.e., inmate violence and attacks.

49.     Defendants breached this duty by failing to assign and provide an on-duty correctional officer in a dead-end hallway known to be unsafe and unsecured for inmates.  As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

50.     Defendants had a duty to secure the dead-end hallway with security cameras in the prison facility in an area known to be a safety hazard for inmates, i.e., inmate violence and attacks.

51.     Defendants breached this duty by failing to provide security cameras in area containing a dead-end hallway known to be unsafe and unsecured for inmates.  As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

52.     Defendants had a duty to assign and provide an on-duty correctional officer at the dead-end hallway in the prison facility in an area known to be a safety hazard for inmates, regarding, inmate violence and attacks.

53.     Defendants breached this duty by failing to assign and provide an on-duty correctional officer in a dead-end hallway known to be unsafe and unsecured for inmates. As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

54.     Defendants had a duty to secure the locked stairwells in the Eastside Compound with security cameras in the prison facility in an area known to be a safety hazard for inmates, i.e., inmate violence and attacks.

55.     Defendants breached this duty by failing to provide security cameras in area in the stairwell area known to be unsafe and unsecured for inmates.  As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

56.     Defendants had a duty to assign and provide an on-duty correctional officer at the locked stairwells in the Eastside Compound stairwell in the prison facility in an area known to be a safety hazard for inmates, i.e., inmate violence and attacks.

57.     Defendants breached this duty by failing to assign and provide an on-duty correctional officer at the stairwell known to be unsafe and unsecured for inmates.  As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

58.     Defendants had a duty to provide a safe and unlocked egress including unlocked stairwell doors in the Eastside Compound of the prison facility in an area known to be a safety hazard for inmates, i.e., inmate violence and attacks.

59.     Defendants breached this duty by failing to provide an unlocked egress at the door of the stair well for a safe and secure exit for an inmate. As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

60.     Defendants had a duty to exercise reasonable control, reasonable security and reasonable supervision over the inmates at FCI Fort Dix in order to protect inmates such as Mr. Berroa.

61.     Defendants breached this duty by not providing reasonable security, control or supervision over the inmates. As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

62.     Defendants had a duty to maintain security of the prison for the benefit of prisoners like Mr. Berroa by settling disputes between inmates.

63.     Defendants breached this duty by failing to perceive the dispute between Mr. Berroa and his fellow inmates because the subject area was not properly monitored due to the failure of defendants to ensure the proper rounds were made and the area lacked security cameras.  As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

64.     Defendants had a duty to maintain security of the prison for the benefit of prisoners like Mr. Berroa by preventing disturbances.

65.     Defendants breached this duty by failing to perceive the assault on Mr. Berroa that occurred for more than five minutes because the subject area was not properly monitored

due to the failure of defendants to ensure the proper rounds were made and the area lacked security cameras.  As a result, Mr. Berroa was severely beaten and physically assaulted and suffered severe and permanent injuries.

66.    Defendants had a duty to maintain security of the prison for the benefit of prisoners like Mr. Berroa by inspecting the premises and preventing contraband from entering the prison.

67.    Defendants breached this duty by, upon information and belief, allowing an unknown foreign object into the prison, which was used in the attack on Mr. Berroa.

68.    Defendants had a duty to provide immediate medical care to Mr. Berroa for the harm caused by other inmates.

69.    Defendants breached this duty by failing to provide and render immediate medical care and assistance. As a result, Mr. Berroa endured hours of agonizing and unnecessary pain.

70.    Defendants had a duty to provide immediate pain medication upon a doctor's order to Mr. Berroa.

71.    Defendants breached this duty by failing to provide and render his pain medication within a reasonable time. As a result, Mr. Berroa endured hours of agonizing and unnecessary pain.

WHEREFORE, Plaintiff, Harryel Berroa, seeks judgment in his favor, and against Defendants, jointly and severally: (1) in an amount in excess of one million dollars ($1,000,000.00) for all economic damages, pain and suffering, loss of future earning capacity, etc.; (2) punitive damages; and (3) Such other relief as the Court deems appropriate.

## COUNT II-8th AMENDMENT VIOLATIONS

72.     Plaintiff hereby incorporates paragraphs 1 through 71 of this Complaint as though set forth herein at length.

73.     Defendants violated Mr. Berroa's 8th Amendment Constitutional right to be free from cruel and unusual punishment because the Defendants failed to take reasonable measures to protect Mr. Berroa from inmate violence.

  a.   Defendants were deliberately indifferent to the substantial risk of harm that was posed by the lack of security cameras and the lack of on-duty correctional officers posed at the stairwell and the dead-end hallway.

  b.   Defendants were aware of the substantial harm due to previous complaints by other inmates.

  c.   Due to their deliberate indifference to the lack of security, Mr. Berroa suffered severe and permanent injuries.

74.     Defendants violated Mr. Berroa's 8th Amendment Constitutional Rights when correctional officers did not render immediate medical attention to Mr. Berroa, despite his bloody nose, obliterated right orbital bone, bloody nose, breathing difficulties, and other severe bodily injuries. It was hours before Mr. Berroa was taken to Robert Wood Johnson in Hospital for medical attention.  This, and other delays, amount to deliberate indifference and thus, are tantamount to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

75.     Defendants violated Mr. Berroa's 8th Amendment Constitutional right when they recklessly disregarded Mr. Berroa's need for pain medication upon his return from Cooper Hospital, by delaying the administration of pain medication, leaving him in solitary confinement with no pain medication, in agony, for four days. This, and other delays, amount to deliberate

indifference and thus, are tantamount to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

76.     Defendants violated Mr. Berroa's 8th Amendment Constitutional right when they delayed necessary and recommended medical treatment to instead place him in solitary confinement.  This, and other delays, amount to deliberate indifference and thus, are tantamount to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

77.     Defendants violated Mr. Berroa's 8th Amendment Constitutional right when they delayed necessary medical treatment to put him in solitary confinement and he endured needless suffering from the denial of simple pain management.  This, and other delays, amount to deliberate indifference and thus, are tantamount to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

78.     Defendants violated Mr. Berroa's 8th Amendment Constitutional right when Mr. Berroa was denied daily assistance with his medical and personal care.

79.     WHEREFORE, Plaintiff, Harryel Berroa, seeks judgment in his favor, and against Defendants, jointly and severally: (1) in an amount in excess of one million dollars ($1,000,000.00); (2) punitive damages; and (3) Such other relief as the Court deems appropriate.

## COUNT III-MEDICAL NEGLIGENCE

80.     Plaintiff hereby incorporates paragraphs 1 through 79 of this Complaint as though set forth herein at length.

81.     Defendants and the medical providers, including physicians, nurses, etc., employed, supervised, or controlled by the Bureau of Prisons and those subcontracted by the

Bureau, owed a duty to Mr. Berroa to treat his injuries within the reasonable standard of care that would be applied by other medical providers in New Jersey under the circumstances.

82.     Defendants breached that duty to when they deviated from a reasonable standard of care by not providing Mr. Berroa, fresh from surgery, face and head still swollen, without pain medication of any kind for four days while in solitary confinement.

83.     When eventually offered some pain medication, it was woefully inadequate ibuprofen.

84.     Mr. Berroa had been prescribed no less than Tylenol 3 upon discharge from Cooper Hospital.

85.     Further, Mr. Berroa was not informed of the severity of his injuries until approximately one month after returning to Fort Dix.  Until that time, he was given the impression by Defendants and prison medical providers that he had merely suffered a broken nose.

86.     Moreover, upon information and belief, FCI Fort Dix unilaterally cancelled follow up appointments made or recommended by Cooper Hospital upon discharge and sent Mr. Berroa to facilities the prison wanted him to go to.

87.     Because of the delay in the administration of pain medicine, Mr. Berroa needlessly suffered days of excruciating pain and suffering.  Further, because of the failure to inform him of the severity of his injuries, his right eye was allowed to sink or settle into his obliterated right eye socket.  Mr. Berroa walked around the prison for the next seven months with the deformities resulting from the incident on March 22, 2019.

88.     Because of the injuries stemming directly from the delay in pain management and other standard care, Mr. Berroa did suffer prolonged deformity, vision depth and perception

problems, light sensitivity, depression, mental anguish, anxiety, Post-traumatic stress disorder, etc.  He also was caused, upon his release from FCI Fort Dix, to incur substantial financial cost to finally repair his injuries through various consultations with specialists and several surgeries followed by painful intervals of recovery.

89.    As a direct and proximate result of the aforesaid incident, Plaintiff, Harryel Berroa, sustained personal injuries including but not limited to:  a right orbital rupture and collapse, displaced right eye, blurred vision, double vision, destruction of his right orbital bone, deviated septum (broken nose), upper body bruising, breathing difficulty, head contusion, headaches, nightmares (sleeping only 4 hrs.), light sensitivity, PTSD, unable to judge spatial and depth perception. Moreover, Plaintiff may also have suffered injury to his neck, back, upper and lower extremities, internally and to his nerves and nervous system as well as possible aggravation, exacerbation, activation and acceleration of any pre-existing ailments or conditions which he may have had, all to Plaintiff's great detriment and loss.

90.    As a further result of the aforesaid accident, Plaintiff has and may continue to suffer from fear, frustration and anxiety.

91.    As a further result of the aforesaid accident, Plaintiff has and may continue to suffer from embarrassment, humiliation and degradation.

92.    As a further result of the aforesaid accident, Plaintiff has and may continue to suffer from a loss of the normal pleasures and enjoyment of life.

93.    Mr. Berroa has undergone at least three (3) reconstructive surgeries at the Wills Eye Institute and Jefferson Hospital.

94.     As a further result of the aforesaid accident, Plaintiff has and may continue to suffer from great physical pain and suffering, mental pain and suffering, emotional upset and other non-economic losses.

WHEREFORE, Plaintiff, Harryel Berroa, seeks judgment in his favor, and against Defendants, jointly and severally: (1) in an amount in excess of one million dollars ($1,000,000.00); (2) punitive damages; and (3) Such other relief as the Court deems appropriate.

## COUNT IV-VIOLATIONS OF THE REHABILITATION ACT

95.     Plaintiff hereby incorporates paragraphs 1 through 94 of this Complaint as though set forth herein at length.

96.     As a result of the injuries stemming from his attack, Mr. Berroa was no longer able participate in any educational or work programs.

97.      Reasonable accommodations allowing him to participate in educational or work programs were denied to him by the officials at FCI Fort Dix.

98.     Mr. Berroa was not provided any assistance with his daily activities.

99.     The denial of reasonable accommodations and assistance with daily activities amount to violations of the Rehabilitation Act.

WHEREFORE, Plaintiff, Harryel Berroa, seeks judgment in his favor, and against Defendants, jointly and severally: (1) in an amount in excess of one million dollars ($1,000,000.00); (2) punitive damages; and (3) Such other relief as the Court deems appropriate.

Respectfully submitted,

**LAW OFFICES OF IVAN E. LEE**

BY: _____

    IVAN E. LEE, ESQUIRE
    Attorney for Plaintiff, Harryel Berroa
    **BY:** Ivan E. Lee, Esquire
    Attorney I.D. No. 308434
    P.O. Box 37635 #77301
    Philadelphia, Pennsylvania 19101-0635
    P: (215) 297-4072
    F: (267) 543-7048
    mquantrell@ivanleelaw.com

Dated:  March 21, 2022